IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENID BARNETT,<br><br>    Plaintiff,<br><br>v.<br><br>WASTE MANAGEMENT INC.,<br><br>    Defendant. | Case No. 24 C 6436<br><br>Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Enid Barnett brought this action in state court against her late husband's former employer, Defendant Waste Management, Inc., to compel arbitration under the Illinois Uniform Arbitration Act. (Notice of Removal, Ex. A at 12-14, 23-26, Dkt. 1-1).[1] Defendant timely removed the case asserting federal question and diversity jurisdiction (Dkt. 1), and later moved to dismiss the state-law claim as preempted by federal law. (Dkt. 11). For the reasons discussed below, Defendant's motion is granted.

**BACKGROUND**

In September 1988, Plaintiff's spouse, Eugene Barnett, entered into a Retirement Benefits Agreement ("the Agreement") with his then-employer, The Brand Companies, Inc. (Notice of Removal, Ex. A at 23-24 ¶¶ 1, 5, Dkt. 1-1). The Agreement sets forth certain retirement benefits granted to Eugene including, as relevant here:

---

[1] Unless otherwise noted, page numbers in citations to the docket reference "PageID #" in the CM/ECF header of the filing, not other page numbers in the header or footer of the document. The Court notes that Exhibit A to the Notice of Removal includes a "Motion to Compel Arbitration" at pages 12-14 and a "Petition to Compel Arbitration" at pages 23-26, both of which appear to have been filed in the state court on 6/14/2024. It is unclear why Plaintiff filed both a motion and a petition, but they request the same relief, so the Court cites only to the Petition to Compel Arbitration in this Opinion.

1

>**Annual Retirement Benefit**. The Company shall provide to the Employee an annual retirement benefit of $120,000 (the "Retirement Benefit") commencing in the year 1994 and ending on the earlier of the Employee['s] death or the payment of the fifteenth annual installment thereof in the year 2008. The Company shall establish an irrevocable trust, in a form substantially similar to the form annexed hereto as Annex A which shall serve as a vehicle for providing the Retirement Benefit. This Trust shall be designed not to result in taxable income to the Employee until Retirement Benefits are actually paid to the Employee. The Company shall make a contribution to the trust on the date of execution of this Retirement Benefits Agreement in an amount sufficient to purchase 15 zero coupon investment grade bonds each with a face value of $120,000 and with yearly sequential maturity dates commencing in 1994 and ending in 2008.
>
>**Additional Retirement Benefit**. The Company shall provide to the Employee beginning on January 1, 1994 an additional annual retirement benefit for his lifetime equal to the amount by which the "Retirement Base" exceeds any Retirement Benefit payable in that year. The term "Retirement Base" shall mean an amount equal to $120,000, adjusted annually commencing January 1, 1994, and each January 1 thereafter, for the calendar year then commencing by multiplying $120,000 by the sum of (i) 1.00 plus (ii) the sum of the positive percentage change, if any, over the prior year in the "Consumer Price Index (1967 = 100)," published by the U.S. Department of Labor, Bureau of Labor Statistics (the "CPI") for each calendar year in the period from January 1, 1989 through December 31 of the year preceding the year in which the adjustment is made; provided, however, that the percentage change for any calendar year shall not exceed the lesser of (x) 50% of the change in the CPI from the previous year or (y) 3%. If publication of the CPI is discontinued, the parties hereto shall accept comparable statistics as computed and published by an agency of the United States or by a responsible financial periodical or recognized authority then to be selected by the parties.

((*Id.* at 28-29 ¶¶ 1, 2). The Agreement also includes "Survivor Benefits" for a spouse who survives Eugene's death:

>Upon the death of the Employee either before or after his retirement, commencing in the calendar year following the year in which the Employee dies, there shall be payable to the surviving spouse of the employee (the "Spouse") a benefit for the Spouse's lifetime at an annual rate equal to 50% of the Retirement Base. If the Employee dies at a time when there are assets remaining in the trust referred to in [the Annual Retirement Benefit section], the assets of the trust shall be used to fund the benefit payable under this Section. If the Spouse should predecease the Employee, there shall not be a benefit payable pursuant to this subsection.

(*Id.* at 29 ¶ 3). Additionally, the Agreement provides post-retirement medical coverage for Eugene and his surviving spouse:

2

> The Company shall provide to each of the Employee and his Spouse medical and dental insurance coverage for their lifetimes commencing on January 1, 1994. The medical and dental insurance coverage provided for the Employee and his Spouse shall be equivalent to the medical and dental insurance coverage available to the Employee and his Spouse under the Employment Agreement as of December 31, 1993; provided, however, that the medical and dental insurance coverage provided hereunder shall be no less than the coverage available to the Employee and his Spouse under the Employment Agreement as of the date of execution of this Retirement Benefits Agreement.

(*Id.* at 29-30 ¶ 5).

Furthermore, the Agreement contains the following arbitration provision: "[a]ny dispute related to the interpretation or enforcement of this Retirement Benefits Agreement shall be enforceable only by arbitration . . . in accordance with the commercial arbitration rules then in effect of the American Arbitration Association[.]" (*Id.* at 30-31 ¶ 7). It also specifies how arbitration, if necessary, would proceed. (*Id.*).

After Eugene signed the Agreement, Defendant acquired The Brand Companies, Inc. (*Id.* at 24 ¶ 7). Eugene died in October 2022 while Plaintiff was still his spouse. (*Id.* at ¶ 9). Defendant has provided Plaintiff with medical and dental insurance coverage but not the "benefit for the Spouse's lifetime at an annual rate equal to 50% of the Retirement Base." (*Id.* at ¶ 10). Believing she was also entitled to receive the latter benefit, in February 2024, Plaintiff initiated arbitration proceedings with the American Arbitration Association (AAA) as required by the Agreement. (*Id.* at ¶ 11). On March 7 and 22, 2024, AAA requested that Defendant pay its portion of the required filing fee. (*Id.* at 25, ¶ 12). Defendant neither responded to AAA about the filing fee nor otherwise participated in the arbitration proceedings, resulting in AAA dismissing the arbitration initiated by Plaintiff. (*Id.* at ¶¶ 12-13). As a result, Plaintiff filed suit, seeking an order compelling Defendant to participate in arbitration. (*Id.* at 25-26).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief may be granted. While a complaint need not include "detailed factual allegations," a plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In analyzing a motion to dismiss under Rule 12(b)(6), this Court must "accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). However, the court need not accept legal conclusions as true. *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A claim must be facially plausible to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**DISCUSSION**

Defendant argues that Plaintiff's petition under Illinois law must be dismissed because it is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. (ERISA). (Def.'s Mem., Dkt. 12). Plaintiff responds that the Agreement is "merely a contract between an employer and one employee that lacks the complexity and numerosity necessary to require the exercise of managerial discretion, or a separate, ongoing administrative scheme" and therefore ERISA does not preempt Plaintiff's state law claim. (Pl.'s Resp. at 65, Dkt. 15). Upon consideration of the parties' arguments and the governing case law, the Court agrees with Defendant.

ERISA includes a preemption provision which is intended to ensure a uniform administrative scheme for employers administering employee benefit plans. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 8-15 (1987) (discussing purpose of ERISA preemption provision).

ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce" subject to certain exceptions, none of which apply to this case. 29 U.S.C. § 1003(a)(1). An "employee benefit plan" includes an "employee pension benefit plan," which is defined as "any plan, fund, or program . . . established or maintained by an employer and by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program . . . provides retirement income to employees[.]" *Id.* at §§ 1002(2)(A)(i), (3).

Because the statutory definitions are broad, "[their] contours . . . have been fleshed out by the courts." *Aurelius v. Jones, Lang, Lasalle, Inc.*, No. 04 C 7502, 2005 WL 3042676, at *2 (N.D. Ill. July 11, 2005). Specifically, the Supreme Court has established that for a plan to be governed by ERISA, it must have "an ongoing administrative program to meet the employer's obligation." *Fort Halifax*, 482 U.S. at 11. Indications of an "ongoing administrative program" include varying and periodic payments and the exercise of managerial discretion. *Aurelius*, 2005 WL 3042676, at *3. Some years after *Fort Halifax*, the Seventh Circuit delineated that a plan governed by ERISA needed to have reasonably ascertainable terms, citing criteria adopted by the Eleventh Circuit. *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809, 811-12 (7th Cir. 1994). Namely, "a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* at 812 (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)). *See also Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1374 (7th Cir. 1997) (*abrogated on other grounds by Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427 (7th Cir. 1998)) (case law "teach[es] that an ERISA plan requires an ongoing administrative scheme . . . and that its terms must be reasonably ascertainable[.]").

5

Neither side contests that the Agreement here provided retirement benefits to Eugene and Plaintiff, as his surviving spouse, that the benefits were established and maintained by Defendant, who was Eugene's employer, or that Defendant is engaged in commerce or in any industry or activity affecting commerce. Rather, the parties disagree about whether the Agreement requires an "ongoing administrative program" and contains "reasonably ascertainable terms" as courts have articulated those requirements.

I. **Ongoing Administrative Program**

Contrary to Plaintiff's contention, the Court finds that the Agreement requires an ongoing administrative program for Defendant to meet its obligations. "Hallmarks" of an ongoing administrative program have been described as the requirement to make multiple payments (rather than one lump-sum payment) to employees at different times under different circumstances, which require the exercise of discretion in determining whether an employee (or, in this case, beneficiary) is entitled to benefits and if so, how much. *Aurelius*, 2005 WL 3042676, at *3. And, an administrative program creates the need for financial coordination and control. *Id.* The Court agrees with Defendant that the Agreement in this case contains the "hallmarks" of an ongoing administrative program.

The Agreement required annual payments to Eugene and then, if applicable, his surviving spouse, as opposed to one lump-sum payment. Those annual payments were to be made to Eugene first for a period of fifteen years (the "Annual Retirement Benefit") and then, after that period expired, for the remainder of his life (the "Additional Retirement Benefit"). The survivor benefits are to be paid to Eugene's surviving spouse for her lifetime (the "Survivor Benefits"), and the post-retirement medical and dental insurance coverage was for the lifetimes of both Eugene and his surviving spouse. As a result, Defendant had (and still has) no way of knowing how long it would

6

be required to make annual payments to and on behalf of the Barnetts. This fact, in turn, evinces the need for financial coordination and control of Defendant's assets. *Cvelbar*, 106 F.3d at 1376-77 (finding plan was governed by ERISA when "[defendant] assumed a 'responsibility to pay benefits on a regular basis' and faced 'periodic demands on its assets that created a need for financial coordination and control.'") (citation omitted).

Plaintiff argues that the payments to Eugene and his surviving spouse are "predetermined" and require only "arithmetic computation." (Pl.'s Resp. at 71). That is incorrect. The payments were not and cannot be predetermined given that the amount of the "Additional Retirement Benefit" is adjusted annually based on a computation tied to the Consumer Price Index (CPI) published annually. The medical and dental insurance coverage also cannot be predetermined as it has the potential to vary based on the insurance coverage offered at specific times under other employee agreements. As such, the Court finds these circumstances more similar to *Cvelbar*, where the Seventh Circuit held that the calculation of benefits required more than mere mechanical, arithmetic computations. 106 F.3d at 1377-78 (medical benefits would vary over time depending on plaintiff's health and defendant had to make determinations about coverage and eligibility in light of existing retirement plans).

Defendant was required to exercise managerial discretion in the administration of the Agreement. Defendant certainly had to determine Plaintiff's eligibility to receive benefits as a surviving spouse. In the event the CPI was discontinued during the lifespan of the Agreement, a "comparable statistic" had to be selected in order to complete the Additional Retirement Benefit calculation. Further, medical and dental benefits had to be compared to the benefits as they existed in 1988 (at the time the Agreement was executed) to determine the appropriate coverage under the Agreement.

Finally, Plaintiff's contention that there is not "sufficient numerosity" to render the Agreement a plan subject to ERISA because the payments were being made only to one individual is contrary to the law of this Circuit. *See Cvelbar*, 106 F.3d at 1376 ("Even if we must characterize the arrangement before us as a one-person plan, we have no difficulty in holding that it is possible for a one-person arrangement to qualify as an ERISA plan. Certainly, the plain language of ERISA in no way excludes from coverage those situations in which only one employee is extended benefits. . . . [A]s long as the benefits program meets the other requirements of an ERISA plan—namely, an ongoing administrative scheme and reasonably ascertainable terms—the program does not fall outside the ambit of ERISA merely because it covers only a single employee.").

All things considered, to administer the benefits of the Agreement, Defendant had to do more than simply write a check. *Fort Halifax*, 482 U.S. at 12 ("To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits."). The facts of this case are sufficiently distinct from *Fort Halifax*, where the defendant was required to merely issue a one-time lump sum payment to employees. Thus, the Court finds the Agreement required an ongoing administrative program.

## II. Reasonably Ascertainable Terms

Any reasonable person could ascertain the terms of the Agreement. First, the intended beneficiaries—Eugene and Plaintiff, his surviving spouse—and the intended benefits—a lifetime of annual payments and medical and dental insurance coverage—are reasonably ascertainable. Second, the amount of the annual retirement benefit as well as the required calculations to determine that payment and survivor benefits are specified in the Agreement. Indeed, Plaintiff

does not argue otherwise but instead points out that the Agreement does not include a named fiduciary or other administrator, a process for claiming benefits, challenging decisions, or other appeals processes, and has no means of funding after 2008. (Pl.'s Resp. at 67, 72-73).

But the Agreement's source of financing is also easily ascertainable, as it is clear the "Annual Retirement Benefit" was to be funded by an irrevocable trust, to which Defendant would contribute "in an amount sufficient to purchase 15 zero coupon investment grade bonds each with a face value of $120,000 and with yearly sequential maturity dates commencing in 1994 and ending in 2008" on the date the Agreement was executed. Plaintiff acknowledges the trust but contends there is no mechanism for funding after 2008. While it is true the Agreement does not explicitly identify the source of post-2008 funding, the Seventh Circuit has held that "payment of benefits out of general funds satisfies the requirement of an ascertainable source of funding." *Diak*, 33 F.3d at 813. Thus, it is reasonable to presume here that when the trust funds were exhausted in 2008, and Eugene continued to receive payments until his death in 2022, benefits were paid from Defendant's general funds.

The Court agrees with Defendant that, although the Agreement does not use the term "fiduciary," its terms make clear that Defendant serves in that capacity. (Def.'s Mem. at 30-32). Additionally, the face of the Agreement states when and how benefits will be paid out (*id.* at 28-29), and how disputes will be resolved. (*Id.* at 30-31). But even if the Court were to find any of these features lacking, Plaintiff's attempt to avoid preemption would still fail since "an employer's failure to meet an ERISA requirement does not exempt the plan from ERISA coverage." *Diak*, 33 F.3d at 812-13 (quotations and citation omitted).

The Court acknowledges, as Plaintiff notes, that the decision as to whether an agreement is governed by ERISA often requires the Court to draw fine lines. (Pl.'s Resp. at 69). *See Cvelbar*,

106 F.3d at 1375 (the distinction(s) between a plan governed by ERISA and benefits not governed by ERISA is "necessarily a 'matter of degrees but under *Fort Halifax* degrees are crucial'") (citation omitted). Indeed, those fine lines had to be drawn here, but ultimately the Court finds that the Agreement meets the criteria required for a plan to be governed under ERISA. Consequently, Plaintiff's petition under state law is preempted.

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff is granted leave to file an amended complaint consistent with this ruling by 4/28/25.

**DATED**: March 31, 2025

**ENTERED**:

*LaShonda A. Hunt*
LASHONDA A. HUNT
United States District Judge